Samuel H. Chute

*vs.*

State of Minnesota.

1. The indictment in this case charged the defendant: 1st, with maintaining a stone building overhanging a public street, and liable and threatening to fall into the same, to the great danger of people passing along such street; 2d, with permitting to remain in said building large quantities of filth, emitting offensive stenches dangerous to public health. *Held*, that the indictment was demurrable as charging two offenses.

2. A written report made by a witness, and by him testified to have been accurately made, was handed to him for examination to refresh his recollection, though it did not appear that the witness did not recollect the facts without refreshing his memory. *Held*, that though, if he recollected the facts without so refreshing his recollection, it would be *idle* to hand him the report for examination, still it could only be said to be unnecesssary and useless. If he did not recollect them without thus refreshing his memory, his examination of the report was of course unobjectionable.

3. When such a report is handed to a witness by one party that he may refresh his memory by examining it, the other party has a right to inspect it for the purpose of cross-examination.

4. Defendant offered to show that he had consulted competent builders, by whom he was advised that the building complained of was in no danger of falling. *Held*, that this testimony was not competent upon the question whether the building was or was not a nuisance, or whether defendant was answerable for maintaining the same.

5. The propriety of ordering a view by a jury in a criminal case is committed to the discretion of the court by *section* 10, *ch.* 114, *Gen. Stat.*

6. *Held*, that the record of the proceedings of the city council of St.

Chute v. State of Minnesota.

Anthony, (where the building aforesaid is situate) at a meeting holden before the indictment in this case was found, showing that defendant was present as an alderman, and that a resolution was then passed declaring said building unsafe, and a public nuisance, and directing the defendant to remove the same, was improperly received in evidence.

7. The indictment was for maintaining the building complained of upon lots one and two, in block three, &c. The evidence showed that the building was upon lots one, two and three in block three, &c. *Held*, that the allegations' of the indictment as to the lots upon which the building was situate, are descriptive of the identity of the subject of the action, and, therefore, essential to be proved as laid.

*Held*, that if the evidence showed that the defendant was maintaining a building upon lots one and two, which as maintained upon *said* lots was a nuisance, the fact that the evidence showed that such building extended over upon lot three, would present a case of redundancy of proof, not of variance.

8. *Ch.* 64, *Laws* 1869, makes it a criminal offense for a mortgagor to remove any building situate upon mortgaged real estate to the prejudice of the mortgagee, "with the intent to impair or lessen the value of the mortgage," without the mortgagee's consent. *Held*, that the court properly instructed the jury, that if a mortgagor removes such building not with the *intent* to impair the value of the mortgage, but in performance of his duty to the public to remove a nuisance, such removal would not make him liable to a prosecution under said *chapter* 64, especially if the act was done in pursuance of an order from public authority.

9. A view by a jury is not allowed for the purpose of furnishing evidence upon which a verdict is to be found, but for the purpose of enabling the jury better to understand and apply the evidence which is given in court.

The plaintiff in error, Samuel H. Chute, was indicted in the district court of Hennepin county. He demurred to the indictment, and his demurrer was overruled, and trial had, resulting in conviction. He removes the cause to this court by writ of error. The nature of the offense charged, and the alleged errors fully appear in the opinion of the court.

LOCHREN, MCNAIR & GILFILLAN, for Plaintiff in Error.

Chute v. State of Minnesota.

I. Defendant's demurrer to the indictment should have been sustained. The indictment is bad on account of duplicity. *Gen. Stat.* 651, *sec* 3, *subd.* 3 ; *Ib.* 646, *sec.* 6.

Two distinct nuisances are charged as being maintained by defendant, differing in kind, arising out of different facts and requiring a different judgment. *Reed vs. The People*, 1 *Park. C. C. R.* 486 ; *People vs. Wright*, 9 *Wend.* 193.

One of these is the maintaining of a high stone building alleged to be leaning and overhanging a public thoroughfare, liable to fall upon people passing along such thoroughfare.

The other is the permitting to remain on land of the defendant, near such thoroughfare, quantities of manure, excrement and other filth, emitting a noisome stench, dangerous to the public health.

These nuisances are entirely dissimilar, and have no necessary or logical connection. The filth and stench has nothing to do with the leaning or dangerous character of the walls.

The judgments would be different.

It could not be necessary to remove the walls of the building to dispose of the stench ; nor would the removal of the filth lessen the danger of the building falling on passers by.

One of these nuisances is the subject of statutory provisions, and a particular and summary remedy is provided, and particular penalties imposed. *Gen. Stat.* 145, *sec.* 52–57.

The other, if a nuisance, is such by common law alone. We have no statute applicable to ruinous buildings. If the building, with its leaning walls, constituted a nuisance, then it is clear that two offenses were charged in the indictment. If it did not constitute a nuisance, then all the testimony admitted in relation to the condition of the structure and its liability to fall, to which defendant objected, should have been excluded The judge's refusals to charge, and charge as

given, were all wrong, and the judgment ordering the removal of the walls was erroneous.

II. The court erred in allowing the witness Long, to examine his report, to refresh his recollection. No foundation was laid for this.

III. The court erred in refusing to require that defendant's counsel be allowed to inspect such report for the purpose of cross-examining the witness Long, who had been allowed to use it as a memorandum to refresh his recollection.

The rule in relation to memoranda so used is: "For the " purpose of seeing that it is an original, and how far the " witness is entitled to rely on it as a part of his memory, the " opposite party is entitled to examine the paper and cross- " examine the witness upon it." *Cowen & Hill's Notes, part 2, note* 377; *Cox vs. Norton,* 1 *Penn. Rep.* 414; *Sinclair vs. Stevenson,* 1 *Carr. & P.* 522; *Rex vs. Ramsden,* 2 *Carr. & P.* 603; 1 *Greenl. on Ev sec.* 437.

IV. The court erred in refusing defendant's offer to show that he had consulted builders, and was advised by them that the building was safe. *Schell vs. Second Nat. Bank,* 14*Minn.* 43.

The evidence was competent, at least, to show that defendant was acting without a willful disregard of the safety of the public, as bearing on the amount of punishment proper to be inflicted in case of conviction.

V. The court erred in directing the jury to view the building. *Taylor vs. The People,* 6 *Park. C. R.* 347.

VI. The court erred in admitting the evidence of the proceedings of the St. Anthony city council.

As the council did not go on to abate the alleged nuisance, its resolutions amounted to nothing, and were no more competent as evidence in this case than would a resolution of so many of any other citizens.

VII. The court erred in charging defendant's second re-

Chute v. State of Minnesota.

quest. The building was clearly proven to have been situate *in part* on land not described in the indictment.

The description of the premises *here*, was material. It entered into the description of the offense, and the slightest variance would be fatal. 1 *Waterman's Archbold, in 2 vols. 7th ed.* 390, *and notes ; Barb. Crim. Law*, 331.

VIII. The court erred in refusing defendant's requests, and in the charge as given following those requests, and excepted to by defendant.

F. R. E. CORNELL, Attorney General.

I. The indictment charges but one offense, that of maintaining a building, in a thickly settled portion of a city, of a character dangerous to the public safety. The averments as to what was in the building and upon the premises are not stated in such manner as would constitute them the gravamen of the offense, and may be rejected as surplusage. No testimony was introduced as to them. The offense charged is an indictable one.

II. There was no error in allowing witness, Long, to look at his report, to refresh his recollection ; and as the witness stated that he recollected the facts, and testified without reference to the memorandum, said exhibit was not offered in evidence, hence the defendant had no right to examine the paper, or cross-examine upon it. This case falls under the first class of cases mentioned in 1 *Green. on Ev., sec.* 437, *Redfield's ed.*, where the writing used need not in fact be produced in court. The ruling of the court on this point was not error.

III. The defendant's offer that he consulted Hall as to the safety of the building in 1866, before he purchased it, and his advice thereon, was properly excluded. He is charged with maintaining a nuisance in May, 1872. No advice of a third

party would excuse him in the commission of a wrong.    As to the question of punishment, that was not before the jury.

IV. The order of the court allowing a view of the premises by the jury, is a discretionary one, not subject to review, unless in case of clear abuse of discretion.

The evidence clearly shows no material change in the condition of the building at the time of the indictment and the view by the jury.

The reason why evidence is not admissible as to the state of things subsequent to the indictment in that class of nuisances or cases mentioned in *Taylor vs. People, 6 Park.* 347, does not apply to this case.    But even if it does, it would be no ground for reversal, as distinctly held in that case, inasmuch as it is apparent from the record that no legal injury has resulted therefrom to the defendant.

V. Proof of the proceedings of the city council, while defendant was present as a member, and acting, declaring this a nuisance, was proper evidence to bring home the knowledge of such fact to the defendant.

VI. There was no error in any of the charges of the court, or in its refusals to charge as requested by defendant.

*By the Court.*—BERRY, J.—I. The indictment in this instance charges two distinct offenses of an entirely different character. One is the maintaining of a stone building overhanging a public street, and liable and threatening to fall into the same, to the great damage of people passing along such street.    The other is the permitting to remain in said building large quantities of filth, emitting offensive stenches dangerous to public health. The demurrer of the defendant below should therefore have been allowed.    *Gen. St., ch.* 111, *sec.* 3.    This conclusion does not, however, necessarily determine the case, as the indictment may be amended by striking out one count.    *Gen. St., ch.* 111,

sec. 7; *State vs. Wood*, 13 *Minn.* 121.  Whether there is any-
thing in the attorney general's position, that as no evidence
was offered as to the latter offense, the duplicity of the indict-
ment is unimportant, it is not necessary in the disposition
which we make of this case to consider.

II. F. B. Long, a witness for the prosecution, and an archi-
tect, testified that he examined the building above mentioned,
and made a written report of the result of such examination.
The witness testifying that he knew that the report (which
was produced and identified) was accurate when made, the
court, upon the offer of the county attorney, allowed the wit-
ness to examine it to refresh his recollection.  The defendant's
counsel argues that this was improper, because it did not
appear that the witness did not recollect the facts without re-
freshing his memory.  If he did so recollect, while it would
certainly seem to be *idle* to refresh his memory, yet it is not
easy to see in what respect the defendant could have been
injured, nor what worse could be said of the inspection of the
report than that it was unnecessary.  If, on the other hand,
the memory of the witness required refreshing, his examination
of the report was entirely unobjectionable.

III. Defendant's counsel asked the court to require that
he be allowed to inspect the report above mentioned, for the
purpose of cross-examining the witness Long, but the court
denied the request.  We see no good reason for the denial.
The witness had sworn that the report was accurate when
made, and it was handed to and examined by him for the pur-
pose of refreshing his recollection.  Why should not the oppo-
site counsel have been permitted to inspect it that he might
see what it was; that he might cross-examine as to its accu-
racy, and as to the time when, and the person by whom it was
made, and that he might ascertain by inspection and cross-
examination whether it was such a document as could proper-

ly and reliably be referred to by the witness for the purpose of refreshing his recollection?

If it was important for the prosecution that the witness should be permitted to examine it, why was it not equally important for the defense to ascertain by its inspection, as well as otherwise, whether its examination was really calculated fairly to subserve the purpose for which it was offered to the witness? We think the court erred in refusing defendant's request. *Rex vs. Ramsden*, 2 *Carr. & Payne*, 603; *Hardy's case*, 24 *How. St. Trial*, 824; *Merrill vs. I. & O. R. Co.* 16 *Wend.* 600; 1 *Gr. Ev.* § 466.

IV. Defendant offered to show that he had consulted competent builders by whom he was advised that the building was not in danger of falling, and he insists that the court erred in excluding the testimony offered. Certainly this testimony was not competent upon the questions whether the building was or was not a nuisance, or whether defendant was answerable for maintaining it, and if, as contended, it was proper to be considered in determining upon the amount of punishment to be inflicted upon the defendant, this might be a very good reason why it should be addressed to the court after verdict, but no reason at all why it should be submitted to the jury.

V. At the request of the county attorney, and against the objection of the defendant, the court ordered the jury under the charge of an officer to "examine and view the building," and such examination and view were had accordingly. Defendant claims that the order was error. *Sec. 10, ch. 114, Gen. Stat.*, enacts that "the court may order a view by any jury empannelled to try a criminal case." The propriety of allowing a view is thus committed to the discretion of the court, and there is nothing to show that the discretion was abused in this instance. So far as the settled case shows, the order was " to

Chute v. State of Minnesota.

examine and view the building." The proper purpose of such examination and view was not stated by the court, it being taken for granted that the jury knew their duty. If the defendant desired the jury to be informed on this subject, he should have requested the court to give the necessary directions.

VI. Notwithstanding defendant's objection, the court received the record of the proceedings of the city council of the city of St. Anthony, (in which the building aforesaid was situate,) at a meeting holden on the 6th day of September, 1870, showing that defendant was present as an alderman, and that a resolution was then passed declaring said building unsafe, and a public nuisance, and directing the defendant to remove the same. We are unable to perceive any ground upon which the reception of this testimony can be justified. If the defendant had offered evidence tending to show that he was entirely and excusably ignorant of the state of facts which made the building a nuisance, there might be some reason for showing that he was not thus ignorant, and for that purpose the records aforesaid might have been competent. But that is not this case. Defendant did not set up excusable ignorance of the *facts*, but claimed that they did not make the building a nuisance. Still if the only possible effect of the testimony (the records) was to show notice and knowledge on defendant's part of the condition of the building, (for which purpose the attorney general contends it was competent,) its reception might be regarded as harmless. But as it might influence, and we cannot say that it did not influence, the minds of the jury in reference to the main question whether a nuisance existed or not, we think its reception was substantial error.

VII. The indictment was for maintaining the building upon lots one and two, in block three, &c. The evidence showed that the building was in part situate upon lots one, two and

three, in block three, &c. The defendant requested the court to charge the jury, " that the building in question is shown by the evidence to be situate in part on premises and land not described in the indictment, and therefore the jury cannot on this indictment find the defendant guilty of the offense charged by maintaining it." The allegations of the indictment as to the lots upon which the building was situate are descriptive of the identity of the subject of the action, and therefore essential to be proved as laid. 1 *Gr. Ev. secs.* 56, 58, 61, 63, 65 ; 2 *Gr. Ev. sec.* 12 ; *People vs. Slater,* 5 *Hill.* 401 ; 1 *Arch. Cr. Pl. and Pr.* [119] *and Notes; Wharton's Cr. Law, sec.* 281. It was, therefore, necessary in this case to show that defendant was maintaining a building upon lots one and two in block three, &c., which *as* maintained upon *said* lots was a nuisance. If the evidence showed that *such* building extended over upon lot three, the case would be one of redundancy of proof, not a case of variance. 1 *Gr. Ev. sec.* 67. Testimony showing that the building extended over upon lot three, would, of course be outside of the issues, though we do not discover that it was objected to in this case. But while the defendant could not under this indictment properly be convicted of maintaining a nuisance upon lot three, still he could properly be convicted of maintaining a nuisance upon lots one and two. (if the evidence was sufficient), notwithstanding it appeared that the building extended over upon lot three. The court was therefore right in refusing defendant's above request, though we do not discover that the jury were properly instructed upon this point.

VIII. Defendant in his last point claims *generally*, that the court erred in refusing several of his requests, and in its own charge to the jury. As defendant's counsel has not deemed it necessary to enlarge upon the matters thus referred to, or to cite authorities in support of his general claim, we will only

Chute v. State of Minnesota.

refer briefly to one or two points which it may be of impor-
tance to consider in view of possible future proceedings.    It
appears that there was a mortgage upon the premises upon
which the building before mentioned was situate, and defen-
dant asked the court to instruct the jury that defendant could
not remove the building without subjecting himself to criminal
liability under the provisions of *ch.* 64, *Laws* 1869, and that
under such circumstances the law does not throw upon him
the duty of incurring such liability.    *Ch.* 64, *Laws* 1869, makes
it a criminal offense for a mortgagor to remove any building
situate upon mortgaged real estate to the prejudice of the
mortgagee, " with the intent to impair or lessen the value of
the mortgage," without consent of the mortgagee.   We are of
opinion that the court was right in refusing defendant's above
request, and in charging the jury that " if a mortgagor removes
a building not with the *intent* to impair the value of the mort-
gage, but in performance of his duty to the public to remove
a nuisance, such removal would not make him liable to a
prosecution under this act, especially if the act is done in pur-
suance of an order from public authority."

IX.  The court also charged the jury as follows :  " You must
weigh the evidence given in court, coupled with your own
examination, and if you are satisfied therefrom, beyond a
reasonable doubt, that the building is a nuisance, and danger-
ous to the public, you should so find."   Defendant's exception
to this instruction was, we think, well taken.   We think the
court below misconceived the proper purpose of a view by a
jury.   The view is not allowed for the purpose of furnishing
evidence upon which a verdict is to be found, but for the
purpose of enabling the jury better to understand and apply
the evidence which is given in court.   *Commonwealth vs.
Knapp*, 9 *Pick.* 515.

If this were not so, then in every case of a view it would be

impossible to determine whether the verdict was justified by the evidence or not, since whatever the jurors might see upon the view could not be presented in a case reporting the testimony. And again, one juror might observe something upon the view which another did not, so that the same evidence would not in fact be submitted to the entire jury. The case would then stand as if one juror had private and peculiar knowledge of facts not known to his fellows to make which available, it is held, that the juror must be sworn and testify to the same. 1 *Gr. Ev.* § 364, *note* 2; 1 *Starkie Ev.* 510, *note* 2. Besides this, the parties have, for the most obvious reasons, a right to know just what evidence is submitted; but this cannot be if every juror is to be permitted to look up facts on his own account.

A different rule as to the proper purpose of a view may perhaps be allowed in case of proceedings, (not according to the course of the common law,) to estimate damages, as in *Parks vs. Boston,* 15 *Pick.* 209, though we refer to this merely to say that we do not now decide the question which such a case would present. This disposes of all the points which we deem it necessary to consider.

The result is, that the judgment is reversed, but as the indictment may be amended by striking out one count, we remand the case that application may be made for such amendment, and thereupon a new trial had, or in case the amendment be not obtained, that the defendant may be discharged.